UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| JIM WALLACE | ) | | |
|---|---|---|---|
| | ) | | |
| Petitioner, | ) | Case Nos. | 4:13-cv-39-HSM-CHS |
| | ) | | 4:08-cr-16-HSM-CHS |
| v. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |
| | ) | | |

**MEMORANDUM OPINION**

Petitioner Jim Wallace ("Petitioner"), a federal prisoner, filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 77].[1] For the reasons that follow, the Court finds an evidentiary hearing on the 2255 Motion is not necessary, and the 2255 Motion shall be DENIED.

**I.  STANDARDS**

A. Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence, if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to

---

[1] All citations to the district court record are to the docket of Case No. 4:08-cr-16, which is the underlying criminal case.

1

render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states "only bald legal conclusions with no supporting factual allegations.") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

2

B. Standard for Ineffective Assistance of Counsel

Petitioner raises several ineffective assistance of counsel issues. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound . . . strategy."

3

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

Moreover, absent clear and convincing evidence to the contrary, a defendant is bound by his or her plea agreement and representations made under oath during a plea colloquy. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry.") (internal punctuation and citations omitted). In *Blackledge v. Allison,* the Supreme Court explained the importance and weight of representations made during the plea hearing, stating:

> the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent

4

> presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge*, 431 U.S. 63, 73-74 (1977).

## II. BACKGROUND

A federal grand jury charged Petitioner with transporting child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1) (Counts One and Three), and possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Two) [Doc. 23, Second Superseding Indictment]. Petitioner pleaded guilty to Count Two without the benefit of a plea agreement, with the understanding that the remaining counts would be dismissed at sentencing [Doc. 43, Courtroom Minutes; Doc. 42, Notice; Doc. 48, Plea Hr'g Tr. at 2]. The undisputed facts of his offense were set forth in the factual basis used during the plea colloquy:

> In late April and early May of 2008, an on-line undercover operation identified [Petitioner's] residence in Winchester, Tennessee, within the Eastern District of Tennessee, as the site of a computer that contained known child pornography. A search warrant was obtained for [that] residence and was executed on July 31, 2008.
>
> During the search, several hard drives containing child pornography as defined in 18 U.S.C. § 2256(8) were recovered. A forensic examination of the hard drives disclosed numerous images of child pornography that had been transported in interstate commerce over the internet and that were created using hard drives that were manufactured outside of the United States.
>
> Other information was discovered on the hard drives seized on July 31, 2008, that showed [Petitioner] knowingly possessed the images of child pornography as charged in Count 2 of the indictment. Information obtained from two witnesses also indicated that [Petitioner] knew that he was in possession of child pornography and had taken steps to conceal the hard drives containing that child pornography from federal authorities.

[Doc. 48, Plea Hr'g Tr. at 11-12]. When specifically asked whether he agreed with those facts, Petitioner said that he did [*Id*. at 12].

During the plea hearing, the Court carefully reviewed with Petitioner the rights he was waiving, his satisfaction with defense counsel's representation, and the maximum penalties he faced under the applicable statutes, including length of imprisonment and supervised release [*Id.* at 5-9]. Petitioner stated under oath that no one had "threatened . . . or forced [him] in any way to plead guilty" and that he had received no promises of "a lighter sentence or other form of leniency" in exchange for his guilty plea [*Id.* at 6]. After the Court reviewed the elements of the offense to which Petitioner was pleading guilty, Petitioner acknowledged his guilt and admitted sufficient facts to establish those elements [*Id.* at 7-8, 11-12].

Forensic examination of Petitioner's hard drives revealed approximately 3,600 still images of child pornography, along with 169 videos containing child pornography; one of the videos focused on the genitalia of Petitioner's six-year-old stepdaughter [Presentence Report ("PSR") at ¶¶ 10, 12]. Based on that video of a minor being used to produce a sexually explicit image, the probation officer applied the cross-reference from U.S.S.G. § 2G2.2(c)(1) to § 2G2.1, for a base offense level of 32 [*Id.* at ¶ 24]. After a four-level enhancement because the girl was then under 12 years old, a two-level enhancement because Petitioner was the girl's parent or legal guardian, and a three-level reduction for acceptance of responsibility, Petitioner's total offense level was 35 [*Id.* at ¶¶ 24-26, 31, 34]. Given Petitioner's criminal history category of I, the advisory Guidelines range for his offense was 168 to 210 months' imprisonment, restricted by the ten-year statutory maximum [*Id.* at ¶¶ 38, 54-55; *see also* Doc. 59, Sent. Tr. at 26].

Through counsel, Petitioner objected to the application of §§ 2G2.2(c)(1) and 2G2.1, and he reiterated that objection during the sentencing hearing [Doc. 49, Notice of Objection; Doc. 59, Sent. Tr. at 3-6]. Specifically, he asserted that the conduct shown in the video of his stepdaughter was not "sexually explicit," and that the United States had not established that he

was the person who produced the video [Doc. 59, Sent. Tr. at 3-7, 15-16]. The Court viewed the video and concluded that it did, in fact, portray a young girl in a sexually explicit manner and involved the lascivious exhibition of her genitals under 18 U.S.C. § 2256(2)(A)(v) [*Id*. at 6-16].

Detective Brett Kniss, of the Internet Crimes Against Children Task Force, then testified that, in his opinion, Petitioner had created the video of his stepdaughter [*Id*. at 17]. Detective Kniss based his opinion on having viewed over 100 videos and 5,000 still images recovered from Petitioner's computer media [*Id*.]. Although the videographer's face was not shown in the video, his shirtless body matched that of Petitioner, as seen in numerous other videos Petitioner possessed [*Id*.]. Moreover, the video had been created in Petitioner's residence, as confirmed by the child's mother [*Id*. at 14-24]. Based on Detective Kniss' testimony and the fact that the girl appeared at ease with the videographer, the Court concluded that "the government has borne its burden of establishing by a preponderance of the evidence, although I will point out that it's a bare preponderance of the evidence, that the individual who took the photographs was Mr. Wallace." [*Id*. at 25]. The Court thus overruled defendant's objection to the cross-reference and adopted the Guidelines calculations set forth in the presentence report [*Id*.; *see also* Doc. 55, Judgment, Statement of Reasons]. When invited to personally address the Court, Petitioner expressed regret and stated he had made "a grave mistake." [Doc. 59, Sent. Tr. at 31]. He begged the Court to grant leniency and impose a sentence at "the lower end of the guidelines," so that he could return home to his family as soon as possible [*Id*.]. Petitioner also insisted that he had "never taken a pornographic picture" [*Id*. at 32]. The Court ultimately sentenced Petitioner to 96 months' imprisonment, well below his Guidelines range and the statutory maximum, followed by lifetime supervised release [*Id*. at 33-35]. When specifically asked whether he had

7

any objection to the sentence imposed, Petitioner responded negatively [*Id*. at 36-37]. Petitioner was released from custody on July 20, 2015. He remains on lifetime supervised release.

Petitioner filed a direct appeal of his sentence, challenging the application of § 2G2.2(c)(1) and the duration of his supervised release [Doc. 62, COA Opinion at 2]. The United States Court of Appeals for the Sixth Circuit rejected Petitioner's claims as meritless, noting that Petitioner had "identified no clear error in [the Court's] factual findings" regarding the video of his step-daughter, and finding "no plain error . . . apparent" in the Court's imposition of a lifetime term of supervised release, which this Court had deemed "necessary for the protection of the public" [*Id.* at 2-3]. Petitioner sought certiorari, which was denied on October 1, 2012 [Doc. 71, Order].

Petitioner timely filed a motion pursuant to 28 U.S.C. § 2255 on June 17, 2013, and subsequently filed an amended motion, as directed by this Court, so as to conform to the local court rules [Doc. 73, § 2255 Motion; Doc. 76, Order; Doc. 77, Amended § 2255 Motion]. The Court will address Petitioner's amended motion [Doc. 77].

### III. ANALYSIS

Petitioner raises several issues related to the sentencing enhancement applied pursuant to U.S.S.G. § 2G2.2(c)(1) which cross references U.S.S.G. § 2G2.1. The Court applied § 2G2.2(c)(1) based on its finding that Petitioner had created a video of a minor (Petitioner's step-daughter) which constituted the lascivious exhibition of her genitals under 18 U.S.C. § 2256(2)(A)(v).[2] Section 2G2.2(c) (hereinafter referred to as "the cross reference section")

---

[2] U.S.S.G. § 2G2.2(c)(1) provides in relevant part:

> If the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct,

8

requires the application of § 2G2.1 which, in turn, requires a base offense level of 32. As a result, Petitioner's Base Offense Level under the 2008 version of the Sentencing Guidelines went from 18 to 32.

Petitioner refers to the video he made of his step-daughter, which resulted in his base offense level escalating from 18 to 32, as the "Sonic" video. As he did at sentencing and on direct appeal, Petitioner contends the Sonic video was not made for sexually explicit purposes. Petitioner asserts that there are two, maybe three, other videos that he made that would prove that the Sonic video was not made for any sexually explicit purpose, and, thus, the cross reference section should not apply. Petitioner asserts that his trial counsel was ineffective because she requested but failed to obtain these videos from the Franklin, Tennessee, Police Department which allegedly possessed them, and that his new counsel at sentencing was ineffective because he failed to argue these same videos would disprove any intent to create a sexually explicit video of his step-daughter.[3] Petitioner also argues that the government had and still has copies of these videos among the considerable amount of electronic data it seized from Petitioner and that the government, in not giving defendant this material, has failed to turn over exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner further argues that these three videos constitute newly discovered evidence which will disprove any intent on his part to make the Sonic video a sexually explicit video.

Petitioner also argues that his sentencing counsel failed to argue that the Sentencing Guidelines were unfair and inequitable and that the application of lifetime supervised release was

---

apply §2G2.1 ….

U.S.S.G. § 2G2.2(c)(1). The base offense level under § 2G2.1 is 32.

[3] It is not clear if Petitioner asserts there are three or two videos that the government failed to turn over. The outcome would be the same, however, whether the number is three or two.

9

not merited given that he has no convictions for "contact sex offenses against children" [Doc. 77, 2255 Motion at 23]. Petitioner further argues that his trial counsel was ineffective because she did not file a motion to suppress evidence which was allegedly seized outside the scope of a search warrant issued for his residence. Petitioner also argues he wanted to withdraw his guilty plea, but his attorney at sentencing refused to allow him to say what he wanted to say to the District Court. Finally, Petitioner asserts he has a terminal illness and therefore his sentence should be reduced.

The Court will first address those arguments related to the two (or three) videos which Petitioner asserts would show that the "Sonic" video was not made for sexually explicit purposes. Each of Petitioner's arguments relating to the videos fails because Petitioner has not made any showing that the videos would or could have caused the District Court to reach a different conclusion about Petitioner's intent in making the "Sonic" video. Petitioner has offered no description whatsoever of these videos and no explanation as to why these videos would disprove or negate the Court's finding that his intention in making the "Sonic" video was to create sexually explicit images. Even if the other videos are devoid of inappropriate imagery or sexual content, that would not negate intent on the part of Petitioner to make the "Sonic" video sexually explicit. Rather, it would simply mean there is one sexually explicit video and two or three that are not sexually explicit.

Consequently, Petitioner has not shown that he was prejudiced by any failure on the part of counsel to pursue production of these videos from the Franklin Police Department or from the government or by any failure to argue at sentencing that the videos would disprove intent on his part. As previously discussed, to successfully pursue an ineffective assistance of counsel claim, a Petitioner must show not only that his counsel's representation was objectively unreasonable,

but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694). Without any explanation of the videos, Petitioner has not met this burden.

The same reasoning applies to Petitioner's *Brady* argument. In *Jefferson v. United States,* the Sixth Circuit discussed the standards which must be met to show a *Brady* violation:

> Under *Brady*, "a defendant's due process rights are violated if the prosecution suppresses material exculpatory evidence that is favorable to the defense." *Hanna v. Ishee*, 694 F.3d 596, 610 (6th Cir.2012). "Likewise, the prosecution violates *Brady* if it ... fails to volunteer evidence not requested by the defense, or requested only generally." *Id*. To succeed on a *Brady* claim, "a habeas Petitioner must show that (1) the withheld evidence was favorable to the Petitioner, (2) the evidence was suppressed by the government, and (3) the Petitioner suffered prejudice." *Jells v. Mitchell*, 538 F.3d 478, 501 (6th Cir.2008).

730 F.3d 537, 550 (6th Cir. 2013) Petitioner has not shown that favorable evidence was withheld from him or that he suffered prejudice as a result.

Petitioner also argues that the videos at issue constitute newly discovered evidence that the Court should consider, presumably in a new sentencing hearing. However, these videos are not newly discovered. Petitioner knew about the videos at the time he was arrested. According to Petitioner, they were part of his collection seized as evidence by law enforcement, and he faults his counsel for not obtaining them from law enforcement prior to the sentencing hearing. His real argument is that his counsel was ineffective for not obtaining the videos to present them at the sentencing hearing to disprove intent to make a sexually explicit video and/or that the government failed to provide him exculpatory evidence. However, as discussed, those arguments are unavailing.

11

Petitioner also appears to argue that application of the cross reference section and his resulting sentence, which includes supervised release for life, is simply unfair or unduly harsh given that he has no prior convictions involving sexual contact with a minor. The propriety of the enhancement was litigated on direct appeal and Defendant's argument was rejected by the Sixth Circuit. Consequently, it may not be re-litigated on collateral review absent highly exceptional circumstances. *Wright v. United States,* 182 F.3d 458, 467 (6th Cir. 1999); *Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *Oliver v. United States,* 90 F.3d 177, 180 (6th Cir.1996). No such circumstances exist here.

Petitioner contends his trial counsel was ineffective because she did not file a motion to suppress evidence seized from a third-party's house [Doc. 77, 2255 Motion at 12]. Petitioner contends law enforcement violated his Fourth Amendment protections against unreasonable searches because the search warrant obtained by law enforcement for his residence did not authorize law enforcement to search the third party's house. Absent Petitioner's having a legitimate expectation of privacy in the place searched, law enforcement did not violate Petitioner's Fourth Amendment rights in searching the third party's residence. "It is well-established that a defendant claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched." *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008) (quoting *United States v. Talley*, 275 F.3d 560, 563 (6th Cir.2001)). Absent a legitimate expectation of privacy in the premises searched, the Fourth Amendment offers no protections to an individual against police intrusions into the premises searched. *See United States v. Hunyady* , 409 F.3d 297, 300 (6th Cir. 2005) (the "capacity to claim the protection of the Fourth Amendment depends upon whether the person who claims the protection of the Amendment has a legitimate

12

expectation of privacy in the invaded place") (quoting *Rakas v. Illinois* , 439 U.S. 128, 143 (1978)). Petitioner cannot show that his counsel's refusal to file a motion to suppress evidence seized from a third party's residence constituted deficient representation because Petitioner has not shown (or even argued) a basis upon which he would have had a legitimate expectation of privacy in the third party's residence.

Petitioner argues he wanted to withdraw his guilty plea, but his attorney refused to allow him to say what he wanted to say to the District Court at sentencing. However, at sentencing the District Court specifically asked Petitioner if he had anything to say. The Petitioner responded that he did, and he spoke at some length to the Court about his background, his work, and the use of technology. He also stated, "I stand here before you today and I confess my guilt of possession of child pornography on one or more storage hard drives that were on my business computers." [Doc. 59, Sent. Tr. at 31]. He asked that the Court sentence him at the lower end of the guidelines. *Id.* Thus, this argument that his attorney was ineffective because he prevented Petitioner from telling the District Court he wanted to withdraw his guilty plea is meritless.

Finally, Petitioner asserted he has a terminal illness, and therefore, his sentence should be reduced. Petitioner was released from custody on July 20, 2015, so this issue is moot. However, even if it were not moot, Petitioner would not prevail on this issue. A request for compassionate release does not allege an error of constitutional magnitude, a sentence imposed outside the federal statutory limits, or an error of fact or law so fundamental as to render the entire criminal proceeding invalid. Accordingly, compassionate release is not a remedy available under § 2255. Instead, compassionate release may be granted, pursuant to 18 U.S.C. § 3582(c), only where the Director of the Bureau of Prisons files a motion seeking a modification of the offender's sentence. *See Engle v. United States*, 26 F. App'x 394, 397 (6th Cir. 2001) (unpublished) ("A

district court may not modify a defendant's federal sentence based on the defendant's ill health, except upon a motion from the Director of the Bureau of Prisons"); *accord United States v. Moses*, 2015 WL 1322380 at *2 (E.D. Mich. Mar. 20, 2015) (unpublished); *United States v. Stokes*, 2013 WL 5566730 at *9 (N.D. Ohio Oct. 9, 2013) (unpublished). Here, no such motion was ever made, and this Court thus lacked authority to modify Petitioner's sentence on the basis of an illness.

## IV. CONCLUSION

For the reasons stated herein, the Court finds no evidentiary hearing for this motion brought pursuant to 28 U.S.C. § 2255 is necessary. The Court further concludes, on the basis of the record before it, that Petitioner is not entitled to relief. The 2255 Motion [Doc. 77] is therefore DENIED.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.


    */s/ Harry S. Mattice, Jr.*
    HARRY S. MATTICE, JR.
    UNITED STATES DISTRICT JUDGE

14

Case 4:08-cr-00016-HSM-CHS   Document 94   Filed 09/27/16   Page 14 of 14   PageID #: 440